IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JOHN WARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-22-737-PRW |
| | ) | |
| MERCY HEALTH, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

Before the Court is Defendant Mercy Health's Motion for Summary Judgment (Dkt. 35). The matter is fully briefed, and for the reasons that follow, the Motion (Dkt. 35) is **GRANTED**.

### *Background*

This employment discrimination action arises out of Plaintiff John Ware's employment with Defendant Mercy Health ("Mercy").[1] Ware was hired on as an Environmental Services Tech II in October 2019, a position he maintained until his termination in August 2021. Generally speaking, Ware's duties involved cleaning floors, carpets, and equipment.[2] Ware worked several different shifts during his tenure at Mercy, going from evening shift, to day shift, to night shift, back to day shift.

---

[1] At this stage, the Court "view[s] the evidence in the light most favorable to the party opposing summary judgment"—here, Ware. *Christoffersen v. United Parcel Serv., Inc.*, 747 F.3d 1223, 1227 (10th Cir. 2014).

[2] Def.'s Mot. for Summ. J. (Dkt. 35-2).

1

In January 2021, Ware injured his shoulder on the job. Ware requested and was granted medical leave under the Family and Medical Leave Act ("FMLA") and the Oklahoma Worker's Compensation Act ("OKWCA").[3] Mercy also granted an extension of medical leave at Ware's request.[4] Following his return, Ware was placed on light duty work in compliance with the restrictions imposed by his treating physician.[5] In March 2021, Mercy set up a table for Ware to perform his work at and asked security employees to keep an eye on him.[6] Ware had a follow-up surgery on his injured shoulder on June 15, 2021. He requested and was granted FMLA leave from June 15 to June 29.[7]

Mercy utilizes an Attendance Policy whereby workers accrue "occurrences" for, e.g., an unexplained absence or failure to punch in or out.[8] The Policy ramps up corrective actions, from verbal coaching at four occurrences all the way up to termination of employment at eight occurrences. The Policy allows acceleration of corrective measures in some circumstances.

Ware exhibited attendance issues beginning early in his employment. Ware received a verbal warning corrective action in March 2020. A written warning followed in October 2020, and a final warning in July 2021. Finally, Ware was terminated on August 10, 2021.

Ware filed a Charge of Discrimination with the Equal Employment Opportunity

---

[3] Ex. 14 (Dkt. 36-14).

[4] Ex. 15 (Dkt. 36-15).

[5] Ex. 6 (Dkt. 36-6).

[6] Ex. 23 (Dkt. 47-23).

[7] Ex. 17 (Dkt. 36-17).

[8] Attendance Policy (Dkt. 36-7).

Commission ("EEOC") in December 2021. EEOC issued a Right to Sue letter in May 2022.

In his Complaint, Ware alleges discrimination, harassment, and retaliation on the basis of race and disability. He also alleges interference with and retaliation for the use or attempted use of FMLA, as well as retaliatory termination in violation of the OKWCA. Ware seeks compensatory and punitive damages for his alleged injuries. Mercy filed its Motion for Summary Judgment (Dkt. 35) in November 2023. In his Response to that motion (Dkt. 47), Ware abandons his race-related claims.

### *Legal Standard*

Rule 56(a) of the Federal Rules of Civil Procedure requires "[t]he court [to] grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding whether summary judgment is proper, the Court does not weigh the evidence and determine the truth of the matter asserted, but instead determines only whether there is a genuine dispute for trial before the fact-finder.[9] The movant bears the initial burden of demonstrating the absence of a genuine, material dispute and an entitlement to judgment.[10] A fact is "material" if, under the substantive law, it is essential to the proper disposition of the

---

[9] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015).

[10] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

claim.[11] A dispute is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.[12]

If the movant carries its initial burden, the nonmovant must then assert that a material fact is genuinely disputed and must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; by "showing that the materials cited [in the movant's motion] do not establish the absence . . . of a genuine dispute"; or by showing that the movant "cannot produce admissible evidence to support the fact."[13] The nonmovant does not meet its burden by "simply show[ing] there is some metaphysical doubt as to the material facts"[14] or theorizing a plausible scenario in support of its claims. Instead, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[15]

When, as here, the nonmoving party has the ultimate burden of persuasion at trial, the moving party "has both the initial burden of production on a motion for summary

---

[11] *Anderson*, 477 U.S. at 248; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[12] *Anderson*, 477 U.S. at 248; *Adler*, 144 F.3d at 670.

[13] Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. at 322.

[14] *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[15] *Neustrom*, 156 F.3d at 1066 (quoting *Anderson*, 477 U.S. at 251–52); *Bingaman v. Kan. City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993).

judgment and the burden of establishing that summary judgment is appropriate as a matter of law."[16] "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."[17] "Once the moving party points out the absence of evidence to create a 'genuine issue' of a 'material fact' on which the non-moving party bears the burden of proof at trial, . . . [t]he non-moving party must set forth specific facts showing there is a genuine issue for trial."[18]

## *Discussion*

Ware's remaining claims are analyzed under the *McDonnell Douglas* burden shifting framework,[19] or a close substitute.[20] These frameworks require the plaintiff to

---

[16] *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002), *as amended on denial of reh'g* (Jan. 23, 2003).

[17] *Id.*

[18] *Otis v. Canadian Valley-Reeves Meat Co.*, 884 F. Supp. 446, 449–50 (W.D. Okla. 1994) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 586), *aff'd*, 52 F.3d 338 (10th Cir. 1995).

[19] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973); *see Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir. 2003) (ADA disparate treatment); *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1186–87 (10th Cir. 2016) (ADA retaliation); *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007) (FMLA retaliation).

[20] *See Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017) (modified burden-shifting framework for ADA failure-to-accommodate claims); *Adair v. City of Muskogee*, 823 F.3d 1297, 1314 (10th Cir. 2016) (OKWCA retaliation). Such frameworks generally do not apply when a plaintiff presents direct, vice circumstantial, evidence of discrimination. *See Davidson*, 337 F.3d at 1189. FMLA interference is a minor exception, as such claims are not formally governed by a burden-shifting/pretext framework. *Campbell*, 478 F.3d at 1287. Ware's FMLA interference claim is discussed separately below.

5

make a prima facie showing of discrimination, generally a low bar to clear.[21] If that showing is made, the burden then shifts to the employer to demonstrate that there was a legitimate, non-discriminatory reason behind the adverse employment action complained of. If the employer clears that hurdle, the burden then shifts back to the plaintiff to offer evidence that the employer's given reason was pretextual.

To demonstrate pretext, a plaintiff must show that the employer's explanation is "so weak, implausible, inconsistent or incoherent that a reasonable fact finder could conclude that is was not an honestly held belief but rather was subterfuge for discrimination."[22] Evidence of pretext could include post-hoc justifications for a termination decision, deviations from standard company policy or procedure,[23] or the employer's prior treatment of the plaintiff.[24]

The Court assumes without deciding that Ware has made out a prima facie case for each of his discrimination claims. As related above, Mercy maintains that Ware's termination had nothing to do with discrimination but was instead in accordance with the ratcheting consequences of absenteeism under the Attendance Policy. The Court therefore turns to Ware's evidence that Mercy's claim is mere pretext. Ware applies his pretext

---

[21] With minor variations in the elements of a prima facie case depending on the type of discrimination at issue.

[22] *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006); *see also Proctor v. United Parcel Service*, 502 F.3d 1200, 1209–10 (10th Cir. 2007).

[23] *See Plotke v. White*, 405 F.3d 1092, 1103–08 (10th Cir. 2005).

[24] *See Colon-Sanchez v. Marsh*, 733 F.2d 78, 81 (10th Cir. 1984).

argument to his remaining claims with the exception of FMLA interference, discussed separately below.

**I. Pretext**

Ware begins his pretext argument by presenting an evaluation of his work performance prior to his injury.[25] Specifically, he highlights the following statement: "John Ware has been a pleasure to work with. He had helped others in his area that were struggling with details. He has been a good detailer. He is a hard worker. Thanks John." Ware argues that the disparity between this evaluation and his later termination demonstrates discriminatory intent. However, at the time of the evaluation, Ware had already received both verbal and written warnings under the Attendance Policy.[26] A generic statement that Ware did good work while on the job does not contradict the then-existing evidence of attendance issues, which necessarily formed a basis for the later final warning and termination.

Ware next disputes that Mercy faithfully implemented the Attendance Policy. Rather, he argues that there were procedural irregularities, and that Mercy manipulated the numbers in order to terminate him while masking its discriminatory intent. As discussed above, the Attendance Policy assigns "occurrences" for different types of absenteeism. An

---

[25] Ex. 11 (Dkt. 47-11).

[26] The verbal warning was given on March 26, 2020, Ex. 10 (Dkt. 47-10); the written warning was given on October 12, 2020, Ex. 20 (Dkt. 47-20); and the performance evaluation was signed off on October 31, 2020, Ex. 11 (Dkt. 47-11). Notably, some of the absences captured in the written warning, issued before Ware's injury, are also part of the final warning (i.e., they were still within the 12-month rolling window of occurrence tracking dictated by the Attendance Policy).

unscheduled absence or failing to record time worked may be worth one occurrence, while showing up late or leaving early are worth half an occurrence. Corrective action "generally" follows a fixed progression, from a verbal coaching session at four occurrences to termination at eight.[27] But the policy allows Mercy to consider "excessive or patterned absences" to determine whether corrective action should be accelerated "up to and including termination of employment."[28]

Ware specifically contests four of the occurrences listed on his termination form. Ware ostensibly received one occurrence for an absence from September 5 through September 6, 2020.[29] Ware provides an electronic timecard that shows that he left early on September 5, and therefore argues that he should have received only a half occurrence.[30] That same timecard shows that Ware used unscheduled personal time off all day September 6, 2020; he does not explain why it would be improper to assign a full occurrence for that unscheduled absence.

Ware ostensibly received one occurrence for an absence on April 30, 2021.[31] He submits a doctor's note recommending that he be excused from work for April 30 and May 1, 2021, and argues that assigning an occurrence to the absence was improper.[32] Mercy

---

[27] Attendance Policy (Dkt. 36-7).

[28] Attendance Policy (Dkt. 36-7).

[29] Ex. 27 (Dkt. 47-27). The Court uses the qualifier "ostensibly" because Mercy's attendance policy corrective action form does not have a way to indicate half-occurrences.

[30] *See* Ex. 13 (Dkt. 47-13).

[31] Ex. 27 (Dkt. 47-27).

[32] Ex. 14 (Dkt. 47-14).

disputes that the absence falls under the "unscheduled absence" exceptions in the policy—while FMLA and ADA absences are exempt, not every doctor's visit qualifies for FMLA or stems from an alleged disability.[33] In addition, as discussed in more detail below, there is no evidence in the record—or even an allegation by Ware—that Mercy was ever made aware of the doctor's note when it assigned the occurrence.

Ware ostensibly received one occurrence for an absence on July 23, 2021, a date he says was covered by approved medical leave.[34] While Ware provides evidence that he did in fact return to work on July 26, 2021,[35] he points to no evidence suggesting that this was a planned date to return from approved medical leave. In his deposition Ware stated that he could return to work on June 29,[36] a date backed up by Mercy's form granting Ware's request for leave from June 15 to June 29, 2021.[37] The timecard records provided by Ware show him using approved FMLA leave up to June 28, but no leave of any kind from that day until his return on July 26, 2021.[38]

Finally, Ware ostensibly received one occurrence for an absence on July 29, 2021.[39] Ware clocked in for work that morning, but was later admitted to Mercy's emergency room for treatment after experiencing chest pains. Ware concludes that no occurrence should

---

[33] Attendance Policy (Dkt. 36-7).

[34] Ex. 27 (Dkt. 47-27).

[35] Ex. 21 (Dkt. 47-21) ("John returned to work Monday [July 26].").

[36] Ware Dep. (Dkt. 50-2), at 89:23–90:13.

[37] Ex. 17 (Dkt. 36-17).

[38] Ex. 15 (Dkt. 47-15).

[39] Ex. 27 (Dkt. 47-27).

have been assessed per the Attendance Policy. Mercy again argues that no Attendance Policy provision excuses Ware's failure to clock out in this circumstance: there is no indication that Ware's illness related to his injury/disability, nor is there any indication that he put in a request for FMLA leave for that date.

Ware has, at best, colorable arguments that Mercy incorrectly applied its Attendance Policy to some of his absences. Even accepting all of Ware's arguments would result in an occurrence total of 6.5 at the time of his termination. While just short of the generally applicable eight occurrence threshold for termination, Ware's absenteeism could have justified accelerated corrective action under the Policy's terms—up to and including termination. In sum, Ware has not demonstrated the kinds of "*serious* procedural irregularities" that would support an inference of discriminatory intent.[40] Looking at the pattern of absenteeism prior to Ware's injury, and the minor quibbles with Mercy's implementation of its Attendance Policy before and after the injury, no reasonable trier of fact could conclude that Mercy's decision to terminate Ware was pretextual.

Ware incorporates by reference several other disputed facts that he says support a finding of pretext. At one point after Ware returned on light duty work, Mercy had Ware perform his work at a table that, at least to some degree, was monitored by Mercy security.[41] In an internal email, Mercy's Director of Operations states that this was done because of "issues with [Ware] staying on task because he tends to get distracted and

---

[40] *Mohammed v. Callaway*, 698 F.2d 395, 401 (10th Cir. 1983) (emphasis added).
[41] Pl.'s Resp. (Dkt. 47-22, 47-23).

socialize too much."[42] This explanation was given contemporaneously, not post hoc, and Ware does not provide any evidence to show that the arrangement violated any policy or procedure. Ware alleges that his supervisor forged Ware's signature on the written warning, but does not explain how, even if true, this fact would be material or suggestive of discrimination.[43] Ware points to emails allegedly showing that Mercy discriminated against him on the basis of his asthma in March 2020.[44] He does not explain how alleged discrimination occurring nearly a year before his injury is probative of his claims of ADA, FMLA, and OKWCA discrimination stemming from his injury.[45] These arguments, too, fall short of demonstrating that Mercy's proffered reasons were "so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude that the reasons were unworthy of belief."[46]

---

[42] Ex. 23 (Dkt. 47-23).

[43] The other three corrective action forms indicate that Ware refused to sign off on them. Def.'s Mot. (Dkt. 36-9, 36-10, 36-11).

[44] Ware argues that he was marked down for absences despite a statement from a Mercy HR manager that he was allowed to use emergency paid leave. But Ware provides no evidence that he actually tried to use emergency paid leave for the absences or that such a request was denied. *See* Ex. 9 (Dkt. 47-9).

[45] An employer's past treatment of an employee can be evidence of pretext for later adverse action, *Colon-Sanchez*, 733 F.2d at 81. Such proof generally takes the form of "employer's prior bad act X was racially motivated, suggesting that later adverse action Y was racially motivated." Here, Ware was not disabled prior to his injury in January 2021.

[46] *Young*, 468 F.3d at 1250.

**II. FMLA Interference**

Though subject to similar analysis, FMLA interference claims are not governed by a *McDonnell Douglas*-style burden shifting framework.[47] Rather, Ware must demonstrate: (1) that he was entitled to FMLA leave; (2) that Mercy interfered with his right to take FMLA leave; and (3) that Mercy's adverse action was related to his attempted exercise of FMLA rights.[48] As support for the second and third elements, Ware again points to the doctor's note recommending that he be excused from work on April 30 and May 1, 2021.[49] He claims that this note would have "likely" justified an FMLA absence, but that Mercy interfered with his FMLA rights by instead assessing an occurrence against him.[50]

However, Ware fails to demonstrate, or even to allege, that he ever put in a request to use FMLA leave for the April 30 absence. Indeed, he fails to allege that he ever showed the doctor's note to anyone at Mercy. As far as the record shows, Mercy granted every FMLA leave request and extension request presented to it by Ware.[51] Ware has failed to make a showing that his FMLA rights were interfered with in regards to his April 30, 2021, absence, because he has failed to show that he ever attempted to exercise his rights in the first place. Ware has failed to present a genuine issue of material fact as to an essential element of his FMLA interference claim.

---

[47] *See Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006).
[48] *Id.*
[49] Ex. 14 (Dkt. 47-14).
[50] Pl.'s Resp. (Dkt. 47), at 25–26.
[51] Def.'s Mot. (Dkt. 36-14, 36-15, 36-17).

*Conclusion*

For the reasons given above, the Court finds that Ware has failed to "set forth specific facts showing there is a genuine issue for trial."[52] Ware has voluntarily given up his race-based claims. Mercy has established that there is no genuine dispute of material fact in the remaining ADA, FMLA, and OKWCA claims, and that it is entitled to judgment on those claims as a matter of law. Accordingly, Mercy's Motion for Summary Judgment (Dkt. 35) is **GRANTED**.

**IT IS SO ORDERED** this 24th day of January 2024.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[52] *Otis*, 884 F. Supp. at 449–50.